KENNEDY *v.* LOCAL 38, UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK, AND DISTILLERY WORKERS OF AMERICA.

1. LIMITATION OF ACTIONS—TORTS—BREACH OF DUTY—DAMAGE—TIME.

The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff.

2. SAME—TORTS—ACTION.

The statute of limitations began to run at the time of the defendants' negligent breach of duty to properly advise plaintiff member of retirement plan of his right under the retirement plan, and not from the time the wrong is discovered or the consequential damages are felt in the absence of fraudulent concealment by defendant union and defendant trustee of retirement plan.

3. SAME—STATUTES—ACTION.

The statute of limitations which governs a cause of action is the one in force when the action accrued (CL 1948, § 609.9; CLS 1956, § 609.13).

4. SAME—STATUTES—TORTS—ACTION—RETIREMENT.

Trial court's dismissal of action by plaintiff retiree against his union and retirement plan trustee for damages caused by their alleged breach of fiduciary duty to properly advise him as to his rights under the retirement plan *held,* proper, where the statute of limitations had run; plaintiff's cause of action having accrued at the time of the breach of duty; not when the breach was discovered, or the damage was felt (CL 1948, § 609.9; CLS 1956, § 609.13).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4]  34 Am Jur, Limitation of Actions §§ 160–162.
[3]  34 Am Jur, Limitation of Actions § 49.

Appeal from Common Pleas Court; Stanczyk (Benjamin C.), J. Submitted Division 1 March 10, 1966, at Detroit. (Docket No. 1,149.) Decided July 12, 1966.

Complaint by Percy T. Kennedy against Local 38, United Brewery, Flour, Cereal, Soft Drink, and Distillery Workers of America, CIO, a labor association, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO, a labor association, and City National Bank, a Michigan banking corporation, trustee of Detroit Brewers and Distributors Retirement Plan and Trust, jointly and severally, to recover damages caused by a breach of defendants' fiduciary duty to advise plaintiff as to his rights under the retirement plan. Defendants' motion to dismiss was granted. Plaintiff appeals. Affirmed.

*Klar, Klein & Rosenberg* (*Louis T. Klein,* of counsel), for plaintiff.

*Livingston, Gregory, Van Lopik & Cranefield* (*Nancy Jean Van Lopik* and *Charles K. Higle,* of counsel), for defendants.

Lesinski, C. J. Plaintiff appeals claiming that the common pleas court of Detroit erred in granting defendants' motion to dismiss which was based upon the defense that the statute of limitations barred plaintiff's claim.

Plaintiff became a temporary member of Local 38, United Brewery, Flour, Cereal, Soft Drink, and Distillery Workers of America, CIO, a labor association, and International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, CIO, hereafter referred to as Local 38,

on July 20, 1944, when he commenced employment in the brewery industry. In April of 1947, plaintiff was initiated a full member of Local 38. Plaintiff was continuously employed in the brewery industry from July 20, 1944, to October, 1952.

On July 10, 1950, the brewery companies and distributors of Detroit, Michigan, entered into a collective bargaining agreement with the defendants, including locals 3, 38 and 181, whereupon the Detroit Brewers and Distributors Retirement Plan and Trust was established. The purpose of this plan was to provide retirement benefits for all eligible employees, including plaintiff. The City National Bank, a Michigan banking corporation, was appointed trustee of the retirement plan and trust.

Under the retirement plan, the first 5 years of an employee's service must be deducted in computing his retirement benefits. A terminating employee must make his claim for benefits within 1 year after the benefits are payable. A terminating employee who receives benefits, or takes a withdrawal card without receiving any benefits, and later returns to the industry, shall return to the industry as a new employee and shall be required to complete an additional 5 years of service before qualifying for additional benefits under the plan. The plan also provides that if an eligible employee leaves the industry and *does not* take out a withdrawal card, then only the original 5-year period will be deducted from his service in computing his retirement benefits upon his return to the industry.

In October of 1952, work was not available to the plaintiff in the brewery industry. Thinking he was protecting his rights as a union member, including his retirement benefits, plaintiff took out a withdrawal card from the union. He obtained temporary employment outside the brewery industry.

In June, 1953, plaintiff returned to the industry, submitted his withdrawal card to defendant Local 38, and commenced paying union dues again. He continued in the employment of the industry until January, 1965.

In January, 1965, plaintiff, having reached the age of 62, retired and applied for benefits under the retirement plan. On February 8, 1965, plaintiff received a check from the Detroit Brewers and Distributors Retirement Plan and Trust for his retirement benefits. In computing plaintiff's benefits, two 5-year periods, or 10 years, were deducted from the total years of service.

Plaintiff instituted present action on March 12, 1965, alleging defendants, Local 38 and City National Bank, trustee, were agents of plaintiff in the negotiation and operation of the retirement plan. It was further alleged that defendants breached their fiduciary duty in negligently failing to advise plaintiff of his rights under the retirement plan, *i.e.,* that the taking of a withdrawal card would terminate plaintiff's rights under said retirement plan and necessitate a new 5-year period of employment in the industry before again becoming eligible for benefits. In response to plaintiff's action of March 12, 1965, defendants filed their motion to dismiss. From the granting of defendants' motion by the lower court, plaintiff appeals.

The issue raised here is whether a cause of action accrues upon a negligent breach of duty by an agent at the time of the breach or when substantial harm from the breach is felt.

Plaintiff contends that the present case falls into the class of cases where it has been held that if there is *no* injury to plaintiff at the time of defendant's wrongdoing, the cause of action does not accrue until the injury occurs. Plaintiff claims that he was not

injured until he applied for benefits in January, 1965. Since this action was commenced in March, 1965, plaintiff concludes that the statute has not run against him. He cited as authority *Rodibaugh* v. *Caterpillar Tractor Company* (1964), 225 Cal App 2d 570 (37 Cal Rptr 646); *Hanna* v. *Fletcher* (1956), 97 App DC 310 (231 F2d 469, 58 ALR2d 847), certiorari denied, *sub nom. Gichner Iron Works, Inc.*, v. *Hanna*, 351 US 989 (76 S Ct 1051, 100 L ed 1501); *Smith* v. *City of Seattle* (1898), 18 Wash 484 (51 P 1057, 63 Am St Rep 910). It is significant to note that in the cases cited by plaintiff, no injuries resulted at the time of the wrongdoing. We believe these cases are distinguishable from the present case.

The test to determine when the statute of limitations begins to run may be stated as follows, 54 CJS, Limitations of Actions, § 168, p 122:

"The test to determine when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage does or does not itself constitute a legal injury, that is, an injury giving rise to a cause of action because it is an invasion of some right of plaintiff."

In an action brought against the county recorder to recover damages based upon the alleged negligence of the recorder in omitting certain statutory requisites in indexing a chattel mortgage which subsequently caused substantial damage to plaintiff, it was held that the cause of action accrued from the time of the negligent act of the recorder, and not from the time plaintiff sustained substantial harm in the loss of his security. *Baie* v. *Rook* (1937), 223 Iowa 845 (273 NW 902, 110 ALR 1062).

In a New Jersey suit brought by a client against defendant, an attorney, for negligently making a false report or an incorrect report of title to certain real property, the question arose as to whether the cause of action accrued at the time of the breach of

duty or subsequently when the client sustained substantial damages resulting from said breach. The New Jersey court in *Sullivan* v. *Stout* (1938), 120 NJL 304 (199 A 1, 118 ALR 211) citing from 17 RCL 766, § 132 said as follows (pp 306, 307):

"An action by a client for the misfeasance or nonfeasance of his attorney is based on the latter's breach of duty, and not on the consequential damages subsequently resulting. In such cases the general rule is that in the absence of fraudulent concealment by the attorney, the statute begins to run at the time of the neglect or misconduct and not from the time when the wrong is discovered or the consequential damages are felt."

See, also, *Aachen & Munich Fire Ins. Co.* v. *Morton* (CCA 6, 1907), 156 F 654.

When plaintiff, in the present case, temporarily left the industry in October, 1952, he took out a withdrawal card. He claims that he took the withdrawal card as a result of defendants' breach of duty in failing to advise him that the taking of a withdrawal card would terminate his rights under the retirement plan and necessitate a new 5-year period of employment in the industry before becoming eligible again for benefits. Upon taking the withdrawal card, plaintiff lost the right to start earning retirement credits immediately upon his return to the industry. The loss of such a right was an injury to plaintiff in October, 1952. It was a sufficient invasion of plaintiff's rights, if occasioned by defendants' negligent breach of duty, to commence the running of the statute of limitations. The fact that plaintiff felt no substantial damages until he actually received his retirement benefits in February, 1965, is not material. Thus, the statute of limitations started to run in October, 1952.

The statute of limitations which governs a cause of action is the one in force when the action accrued.

CL 1948, § 609.9 (Stat Ann § 27.601).* This action, having accrued in October, 1952, was governed by the limiting provisions of CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605).

"All actions in any of the courts of this state shall be commenced within 6 years next after the causes of action shall accrue, and not afterward, except as hereinafter specified: Provided, however,  *  *  *

"2. Actions to recover damages for injuries to person or property and actions for trespass upon lands shall be brought within 3 years from the time said actions accrue, and not afterwards."

The controlling 3-year statute, cited above, started to run in October, 1952, and therefore bars this action which was not commenced until March, 1965.

We conclude that the trial court did not err in granting defendants' motion to dismiss.

Affirmed. Costs to appellee.

T. G. KAVANAGH, J., concurred.

The late Judge WATTS concurred in the results of this decision and the reasoning set forth herein, although he did not sign the opinion prior to his death.

---

* CL 1948, § 609.9 (Stat Ann § 27.601) was re-enacted by and is identical with CLS 1961, § 600.5869 (Stat Ann 1961 Rev § 27A-.5869).