Harold ECHOLS, Plaintiff–Appellant,

v.

CHRYSLER CORPORATION et al.,
Defendants–Appellees.

No. 77–1529.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 9, 1980.

Decided Oct. 27, 1980.

John A. Murphy, Glotta, Adelman, Dinges, Davis, Middleton, Riley & Murphy, Detroit, Mich., for plaintiff–appellant.

William S. Hurst, Keith A. Jenkins, Detroit, Mich., for Chrysler.

Bruce A. Miller, Duane F. Ice, Miller, Klimist, Cohen, Martens & Sugerman, Detroit, Mich., for Union.

Before LIVELY, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

HARRY PHILLIPS, Senior Circuit Judge.

Appellant Harold Echols filed this action April 1, 1976, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against the Chrysler Corporation, his former employer, and the United Automobile Workers of America and its Local No. 212. Chrysler was charged with violating the collective bargaining agreement in various particulars. The Union was charged with failure to represent Echols fairly "in that

the Union, in a grossly negligent and malicious and dishonest manner" settled plaintiff's discharge agreement on February 29, 1969, and in refusing to file a pension grievance for Echols.

Before filing this action, Echols was unsuccessful in processing a complaint through the National Labor Relations Board. His suit in the present case was filed more than seven years after the grievance settlement which was the cause of his asserted loss of pension credits.

All parties filed motions for summary judgment with then District Judge Cornelia Kennedy (now a judge of this court). On June 3, 1977 Judge Kennedy granted summary judgment in favor of the Union on the ground that plaintiff's asserted right of action against the Union was barred by the three year statute of limitations. Summary judgment was granted to Chrysler on several grounds, one of which was "the statute of limitations bars any civil action based on Chrysler's conduct towards plaintiff's employment in 1969 and 1970."

## I

While the present suit was pending on appeal, this court announced its decision in *Gallagher v. Chrysler Corp.*, 613 F.2d 167 (6th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980), holding that the Michigan three year statute of limitations applies to suits under the Labor Management Relations Act against both a labor union and an employer.

On July 25, 1980, this court entered the following order to show cause:

It is ORDERED that the parties show cause, by simultaneous briefs filed on or before August 8, 1980, why the statute of limitations questions presented on this appeal is not controlled by the decision of this court in *Raymond R. Gallagher v. Chrysler Corporation*, 613 F.2d 167 (6th Cir. 1980), and why the other issues should not be submitted on briefs, without oral argument.

Simultaneous responses to this show cause order shall be filed by the parties on or before August 8, 1980.

Both appellees have filed responses to the show cause order, agreeing that the statute of limitation question presented by this appeal is controlled by the decision of this court in *Gallagher*, and that the other issues should be submitted on briefs, without oral argument. Appellant has filed no response to the show cause order.

Accordingly, the case has been assigned to the hearing calendar of this court on briefs, without oral argument. We conclude that the district court correctly granted summary judgment in favor of both Chrysler and the Union because the cause of action against both appellees is barred by the Michigan three year statute of limitations. *Gallagher, supra*, 613 F.2d 167.

## II

Echols contends that the statute of limitations was tolled by the alleged fraudulent concealment by appellees of the disciplinary layoff status of Echols in 1969 and its effect on his pension credits. In order to dispose of this contention and the issue discussed in Part III of this opinion, the facts should be set forth in more detail.

Judge Kennedy summarized the facts as follows:

The amended complaint alleges the following facts. Plaintiff began working for Briggs Manufacturing Company on April 21, 1944, and continued in that employment after Briggs was acquired by Chrysler. On October 21, 1963 plaintiff sustained a back injury when he slipped on some welding rods, and on September 18, 1967 he sustained an eye injury (apparently from an arc welding accident) for which he received one month's workmen's compensation payments. After returning to work plaintiff disagreed with Chrysler officials as to his physical ability to work on a fender line, plaintiff complaining that his back injury incapacitated him. Plaintiff filed a claim with the Michigan Bureau of Workmen's Compensation on November 9, 1967. He was finally discharged by Chrysler on January 10, 1968, for refusal to accept work on the

724

fender line. A grievance was filed over this discharge, which was settled by defendant Local 212 "in bad faith and in a grossly negligent manner" on February 9, 1969; under the terms of this settlement plaintiff was offered reinstatement "in accordance with his seniority and in accordance with his medical restrictions and upon his return to work his discharge was to be changed to a disciplinary lay-off".

Thereafter, On August 25, 1969, an administrative law judge of the Workmen's Compensation Bureau found that plaintiff was disabled from work on the fender line as a result of his back injury and eye injury. Previously, plaintiff had attempted to return to work on March 21, 1969, and on April 1, 1969, but was found to be "not physically capable of returning to work by Defendant CHRYSLER CORPORATION". (Chrysler's post-hearing brief states that this finding was based on hypertension and tachycardia, rather than the alleged back pain that precipitated his discharge). On May 11, 1970, plaintiff was found to be physically able to return to work, and was then reinstated.

On June 13, 1975, plaintiff applied for early retirement pursuant to the "30 and out" provision due to become effective on October 31, 1975. On August 25, 1975, "Plaintiff was informed jointly by defendant Corporation and defendant Union" that he was not eligible for early retirement because on October 31, 1975 he would have only 349 months of pension credits, 11 short of the 360 required. A Mr. Jennings of the International Union told plaintiff the defendant unions would not help him in this matter "because he was a troublemaker." In October of 1975 plaintiff was told that the union would not file a grievance for him regarding his pension denial, and on November 26, 1975, the Pension Board of Administration informed him "that his request for early retirement could not be granted based upon the records supplied to it by defendant CHRYSLER CORPORATION."

Appellant asserts that the statute of limitations was tolled by the actions or inaction of appellees. Under MCLA 600.5855 if a person who may be liable for a claim fraudulently conceals the existence of the claim from the knowledge of the person entitled to sue, the action may be brought within two years after the person discovers or should have discovered the existence of the claim. Appellant contends the allegations in his complaint and affidavits are sufficient to raise an issue of fraudulent concealment.

The appellees respond that the appellant did not raise this question in the district court and is precluded from raising it on appeal. Appellees further assert that the allegations of appellant are insufficient to toll the statute under Michigan law. We conclude that the district court correctly held the three year limitation period barred the action of appellant.

In her opinion and order granting appellees' motions for summary judgment, and in her order denying a motion for a new hearing, Judge Kennedy specifically noted the appellant did not allege that either appellee was guilty of fraudulent concealment of the grievance settlement terms. Appellant asserts that language in his complaint stating the appellees "arbitrarily and maliciously refused to state the precise reasons why plaintiff lack the needed pension credits" and language in his affidavits stating he was never informed of the disciplinary layoff status sufficiently alleged fraudulent concealment. The vague language in the complaint, however, appears to allege that the appellees in 1975 refused to give the appellant the reasons why he lacked pension credits, not that the appellees in 1969 fraudulently concealed the grievance settlement terms. The appellant's affidavits merely allege he was never informed of the disciplinary layoff status, not that the appellees in 1969 refused to inform him of or intentionally concealed the terms of the grievance settlement.

■ Under Michigan law the alleged acts of the appellees did not amount to fraudulent concealment tolling the statute. In

*DeHaan v. Winter*, 258 Mich. 293, 296, 241 N.W. 923 (1932), fraudulent concealment was defined as follows:

Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent.

*Eschenbacher v. Hier*, 363 Mich. 676, 110 N.W.2d 731 (1961); *I.U.U.A.W. of A. v. Wood*, 337 Mich. 8, 59 N.W.2d 60 (1953). The appellant did not allege in the lower court nor argue in his brief in this court that a fiduciary relationship existed with the appellees affirmatively requiring them to disclose all present and future consequences of the disciplinary layoff settlement. Accordingly, the appellant is foreclosed from claiming a fiduciary relationship required the appellees in 1969 to inform the appellant of his loss of pension credits.

A final distinction overlooked by the appellant is that MCLA 600.5855 concerns the fraudulent concealment of a *cause of action*. As the Michigan Supreme Court has stated:

It is not necessary that a party should know the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim. *Eschenbacher*, 363 Mich. at 682, 110 N.W.2d 731.

To like effect see *Kroll v. Vanden Berg*, 336 Mich. 306, 311, 57 N.W.2d 897 (1953).

■ Here the appellant alleges that Chrysler wrongfully characterized his absence as a disciplinary layoff, and the Union settled his grievance in bad faith, resulting in the appellant's conditional reinstatement with seniority but without backpay and benefits. It is uncontradicted that the appellant knew that his conditional reinstatement was without backpay and benefits. As *Eschenbacher* indicates, it was not nec-

essary that the appellant know that the settlement also meant the denial of pension credits, because he knew in 1969 that he could file suit for the alleged wrongful disciplinary layoff status and bad faith settlement. Therefore, he cannot rely on MCLA 600.5855 to allege fraudulent concealment of an action he knew about in 1969.

### III

Appellant claims that his right of action accrued in 1975 when his application for a pension was denied, rather than in 1969 when the grievance settlement was reached. He says that he did not learn until 1975 that his absence in 1968–70 had been classified as a disciplinary layoff because of the 1969 grievance settlement. According to the appellant, his cause of action did not accrue until he "discovered" the damage resulting from the 1969 settlement.

The defendants rely on Michigan law defining a cause of action as accruing "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCLA 600.5827. They persuasively argue that the appellant knew the 1969 settlement, while conditionally reinstating him with seniority, did not grant him back pay and benefits. The denial of backpay and benefits meant under the pension agreement the appellant would not be given pension credits for his absence. The appellant could have complained about the grievance settlement and brought suit, but did not do so.

■ Looking to Michigan state law and decisions as to when a cause of action accrues for statute of limitations purposes, *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974), *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), we conclude that the appellant's cause of action accrued in 1969 when the grievance settlement classified his absence as a disciplinary layoff. In the present action the appellant essentially is complaining of the effect this 1969 settlement had on his pension credits. The appel-

lant cites *Connelly v. Paul Ruddy's Co.*, 388 Mich. 146, 200 N.W.2d 70 (1972), in arguing that the cause of action accrues when all the elements of that cause of action occur, and that the element of damages, his loss of pension credits, did not occur until 1975. This analysis ignores the grievance settlement's other adverse consequences to the appellant: the conditional aspect of the reinstatement, the denial of back pay, and the denial of benefits. If anything, the denial of pension credits during the appellant's absence was another form of damage resulting from the disciplinary layoff status. In discussing MCLA 600.5827, *Connelly* stated:

> It is quite common in personal injury actions to allege and prove future loss of earning capacity, future medical expenses, future pain and suffering. Indeed all of these elements must be alleged and proved in a single cause of action. Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run. Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred. 388 Mich. at 151, 200 N.W.2d 70.

Although *Connelly* discussed a personal injury action and the present case involves a breach of contract allegation against Chrysler, the necessity for alleging future as well as present loss is common to both actions. Here the 1969 settlement resulted in the loss of pension credits and meant that sometime in the future the appellant would be delayed or denied early retirement. As *Connelly* states, this later damage, the denial of early retirement, gave rise to no new cause of action, nor did the statute of limitations begin to run anew when the pension was denied. All the elements of a cause of action, including the element of damage, were present in 1969, the claim accrued then, and the statute of limitations began to run then.

Additionally, the appellees cite *Kennedy v. Local 38 Brewery Workers*, 3 Mich.App. 700, 143 N.W.2d 596 (1966), in arguing that the cause of action accrued in 1969. In *Kennedy* an employee claimed his union breached its duty of fair representation by failing to inform him that the effect of taking a withdrawal card from the union was to require an additional five years of service before qualifying for certain retirement benefits. The employee took the withdrawal card in 1952, but did not discover the effect of his actions until 1965 when he applied for retirement. The Michigan court held the employee suffered an injury, if any, in 1952 and the statute of limitations began to run then, even though the employee felt no substantial damage until he received his retirement benefits in 1965.

Like *Kennedy*, the appellant suffered an injury in 1969 when the grievance settlement affected his pension benefits. The statute of limitations began to run then, even though the appellant claims he was unaware of the damage until he applied for early retirement in 1975. This conclusion is unchanged by the fact that the appellees allegedly failed to inform the appellant of the loss of pension credits, as discussed above in II.

All other contentions of appellant have been considered and are found to be without merit.

The judgment of the district court is affirmed. No costs are taxed. All parties will bear their own costs on this appeal.